
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
DARRYL PETTUS and
JUSTICE BEY-ALLAH,

                Plaintiffs,

- against -

MARIE L. EROLE, d/b/a Marie Erole;
JOSHUA WEISS, a/k/a Yehoshua Weiss, d/b/a
SJ Group Realty LLC; and Does 1-25,

                Defendants.
---------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

19-cv-5893 (AMD) (LB)

**ANN M. DONNELLY,** United States District Judge:

On October 18, 2019, the *pro se* plaintiffs brought this action alleging misconduct in connection with their eviction from their alleged longtime home. For the following reasons, the complaint is dismissed for lack of subject matter jurisdiction.

**BACKGROUND**

In January of 2002, Mr. Pettus and his then-partner signed a lease for a house located at 167 Jefferson Avenue in Brooklyn, New York.[1] (ECF No. 1 at 2.) Mr. Pettus, his family, and a friend—Justice Bey-Allah—lived at that address for over a decade "without interference." (*Id.*) That experience changed when new landlords took control of the building. Defendant Marie Erole purchased the property in 2004. (*Id.* at 18.) In 2015, she commenced a lawsuit in housing court against "Jasper Pettus" and other individuals living at 167 Jefferson Avenue. (*Id.* at 20.) A "managing agent" represented to the housing court that the property was vacant when Erole purchased it; Mr. Pettus and his family may have "resided in the premises prior but have clearly

---

[1] A copy of the first page of the lease agreement is attached to the complaint. (See ECF No. 1 at 9.) Although the lease has a two-year term, it appears that the term dates were changed from 2/1/02 to 1/31/04 to 2/1/07 to 1/31/09. It is unclear who made this alteration.

1

vacated since then and squatted back in the premises without the landlord's consent." (*Id.*) Erole sold the property to SJ Group Realty LLC in 2016. (*Id.* at 18.)

In October of an unspecified year, defendant Joshua Weiss and another person who claimed to be the owner entered the home and told the family to "get out." (*Id.* at 2.) Sometime thereafter, a marshal served the family an eviction notice, giving Mr. Pettus and his family fifteen minutes to leave. (*Id.*) Mr. Pettus contested the eviction in housing court, but could not stay in the home.[2] (*Id.*) Since then, Mr. Pettus, his family and Bey-Allah have been homeless. (*Id.*)

The plaintiffs allege that the defendants violated their constitutional rights, committed fraud and perjury, and caused them emotional distress. (*Id.* at 3-5.) They cite 15 U.S.C. § 1692g, which is a provision of the Fair Debt Collection Practices Act, and sections of the United States Criminal Code related to civil rights violations, fraud, and perjury. They seek millions of dollars in damages, along with "Restoration of Family Back to the Property . . . as . . . legal/lawful homeowners." (*Id.* at 6.)

## LEGAL STANDARD

A federal court must "liberally construe[ ]" pleadings by *pro se* parties, who are held to less stringent standards than attorneys. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Nevertheless, a district court may dismiss a *pro se* action *sua sponte*—even if the plaintiff has paid the requisite filing fee—if the action is frivolous. *Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d 362, 363-64 (2d Cir. 2000). A complaint is frivolous if the court lacks jurisdiction over the matter. *Id.* at 364 (2d Cir. 2000); Fed. R. Civ. P. 12(h)(3). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the

---

[2] The plaintiffs did not specify the status of the housing court proceeding.

2

court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000); *aee* Fed. R. Civ. P. 12(h)(3).

Federal subject matter jurisdiction is available only when a "federal question" is presented, 28 U.S.C. § 1331, or when plaintiffs and defendants are of diverse citizenship and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332. "Federal question jurisdiction may be properly invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law." *State of New York v. White*, 528 F.2d 336, 338 (2d Cir. 1975).

## DISCUSSION

As a general rule, "federal courts do not have federal question subject matter jurisdiction over state residential landlord-tenant matters." *Galland v. Margules*, No. 05 Civ. 5639, 2005 WL 1981568, at *1 (S.D.N.Y. 2005) (collecting cases.) In this case, the plaintiffs have not established any basis for this Court's jurisdiction, and so the complaint is dismissed.

### I.     Due Process

The plaintiffs allege that the defendants violated their constitutional rights. (ECF No. 1 at 3.) Constitutional civil rights claims may be brought pursuant to 42 U.S.C. § 1983. However, Section 1983 imposes liability for constitutional deprivations caused by state actors and cannot be applied to the actions of private individuals or private organizations. The conduct about which the plaintiff complains must be "committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotations omitted).

The defendants in this case appear to be private individuals, and the plaintiffs have not alleged that they are state actors or are acting "under color of state law." Accordingly, the plaintiffs' constitutional claims cannot provide a basis for this Court's jurisdiction.[3]

## II. Fraud

Citing multiple statutes, the plaintiffs also claim that the defendants committed fraud. First, the plaintiffs cite 15 U.S.C. § 1692g, which is a provision of the Fair Debt Collection Practices Act. This statute prohibits certain activities by debt collectors and requires debt collectors to provide specific notifications to consumers. Nothing in the complaint suggests that defendants are debt collectors or subject to the Fair Debt Collection Practices Act. Accordingly, this claim is dismissed.

The plaintiffs also cite 18 U.S.C. § 1341, which makes mail fraud a federal crime. Mail fraud can carry civil liabilities, but only if it falls into a "pattern" of "racketeering activity" as described in the Racketeer Influenced and Corrupt Organizations Act ("RICO").[4] *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit."). "The essential elements of a mail fraud charge are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails to further the scheme." *United States v. Parse*, 789 F.3d 83, 121 (2d Cir. 2015) (internal quotation marks and citations omitted). A necessary element of a

---

[3] The plaintiffs also cite 42 U.S.C. § 1981 in their complaint. (ECF No. 1 at 4.) Section 1981 also requires that a person acting under color of state law commit the acts about which the plaintiff complains. *See, e.g. Simon v. Food and Drug Admin.*, No. 04-cv-252, 2005 WL 2105789, at *3 (E.D.N.Y. Aug. 31, 2005).

[4] Perjury is not a predicate act under RICO. *See United States v. Eisen*, 974 F.2d 246, 254 (2d Cir. 1992) ("Congress did not wish to permit instances of federal or state court perjury as such to constitute a pattern of RICO racketeering acts.").

scheme to defraud is the making of a false statement or material misrepresentation, or the concealment of a material fact. *See Neder v. United States*, 527 U.S. 1, 25 (1999). "Plaintiffs must plead the alleged mail fraud with particularity, and establish that the mailings were in furtherance of a fraudulent scheme." *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013). In this case, the plaintiffs have not alleged any facts in support of a claim for mail fraud. Accordingly, this claim is dismissed.

### III. Additional Criminal Provisions

The plaintiffs also cite additional provisions of the United States Criminal Code in their complaint: 18 U.S.C. § 241, § 242, § 645, § 654, § 1001, § 1038, and § 1621. (ECF No. 1 at 4.) Generally, violations of the criminal code may not serve as the basis for a civil cause of action unless the criminal statute includes an express or implied private right of action. *See Hill v. Didio*, 191 F. App'x 13, 14-15 (2d Cir. 2006) (summary order) ("[W]e have long recognized that crimes are prosecuted by the government, not be private parties."). Only one of the additional sections that the plaintiffs cite provides for civil cause of action:[5] 18 U.S.C. § 1038 ("Whoever engages in any conduct [in violation of the Act] is liable in a civil action to any party incurring expenses incident to any emergency or investigative response to that conduct, for those expenses.").

---

[5] Sections 241, 242, 645, 654, 1001, and 1621 do not include an express private right of action, and no such right may be implied from the language of the statutes. *See Williams v. Maney*, No. 17-CV-5853-GHW, 2017 WL 6729363, at *2 (S.D.N.Y. Oct. 26, 2017) (no private right of action under 18 U.S.C. § 241), *aff'd sub nom. Williams v. Bronx Cty. Child Support Customer Serv. Unit*, 741 F. App'x 854 (2d Cir. 2018); *Storm-Eggink v. Gottfried*, 409 Fed. App'x 426, 427 at *1 (2d Cir. 2011) (no private right of action under section 242); *Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006) ("Nothing in the language or structure of sections 241 and 645 suggests that Congress intended to create a private right of action pursuant to those statutes."); *Johnston v. Torres*, No. 88 Civ. 7697 (MJL), 1990 WL 195926, at *2 (S.D.N.Y. Nov. 27, 1990) (finding no authority that would support implying a private right of action under sections 654 or 1001), *aff'd*, 935 F.2d 1278 (2d Cir. 1991); *Ippolito v. Meisel*, 958 F. Supp. 155, 167 (S.D.N.Y. 1997) (no civil liability for violations of 18 U.S.C. § 1621).

While Section 1038 provides for a civil cause of action, the complaint does not demonstrate how the statute—the Stop Terrorist and Military Hoaxes Act—relates to their claims. The Act criminalizes "engag[ing] in any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of" numerous predicate criminal acts, including nuclear, biological, or chemical weapons, aircraft piracy, and sabotage of nuclear weapons and explosives. 18 U.S.C. § 1038(a)(1). The plaintiffs have not alleged that the defendants engaged in any such conduct. Accordingly, the civil liabilities provision of this act does not provide a basis for jurisdiction over the plaintiffs' eviction claims.

## IV.  Emotional Distress

In light of the dismissal of all federal claims in this action, and upon consideration of the pertinent factors of judicial economy, convenience, fairness, and comity, I decline to exercise supplemental jurisdiction over the state law claims and dismiss them without prejudice. *See* 28 U.S.C. § 1367(c)(3) ("[t]he district court may decline to exercise supplemental jurisdiction over a claim ... [if] the district court has dismissed all claims over which it has original jurisdiction."). The plaintiff is free to bring these claims in state court.

## CONCLUSION

For the reasons stated above, the plaintiffs' complaint is dismissed without prejudice. The Court grants the plaintiffs leave to file an amended complaint within thirty days of this order. All proceedings are stayed for thirty days or until further order of the Court. If the plaintiffs do not file an amended complaint within the time allowed or show good cause why they cannot comply, the Clerk of Court is respectfully directed to enter judgment and close this

case. If the plaintiffs decide to file an amended complaint, it should be titled "AMENDED COMPLAINT" and bear the same docket number as this order, 19-CV-5893 (AMD) (LB). An amended complaint will replace the original complaint. That is, the amended complaint must stand on its own without reference to the original complaint. The plaintiffs must set forth facts to support their claims. For example, for the RICO mail fraud claim, the plaintiffs must allege facts demonstrating a scheme to defraud, money or property as the object of the scheme, and use of the mails to further the scheme, as well as the use of the fraud in a RICO conspiracy. For the constitutional claim, the plaintiffs must provide facts to show that the defendants are acting under color of state law and are not merely private citizens.

**SO ORDERED.**

s/Ann M. Donnelly
_____
Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
November 8, 2019